UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

MARTINEZZ BOWMAN,

Plaintiff,                                              CASE NO.:

   vs.

MARK A. HUNTER, in his official capacity as
Sheriff of COLUMBIA COUNTY SHERIFF'S OFFICE,
DAVID HARVEY, JAYME GOHDE, and K-9 DRAGO, by
and through his owners, trainers and operators COLUMBIA
COUNTY SHERIFF'S OFFICE and DAVID HARVEY,

          Defendants.
_____/

## **COMPLAINT**

COMES NOW, Plaintiff, MARTINEZZ BOWMAN, (hereinafter "BOWMAN"),

by and through the undersigned attorneys, and hereby files this Complaint against

Defendants Deputy DAVID HARVEY ("HARVEY") and Deputy JAYME GOHDE

(hereinafter "GOHDE"), in their individual capacities and for acts that occurred during the

course and scope of their employment with COLUMBIA COUNTY SHERIFF'S OFFICE

("CCSO").  Deputy K-9 DRAGO ("DRAGO") is sued by and through his owners, trainers

and operators SHERIFF MARK HUNTER and DAVID HARVEY. MARK A. HUNTER,

is sued in his official capacity as Sheriff of COLUMBIA COUNTY SHERIFF'S OFFICE

("SHERIFF HUNTER"). In support, Defendant states as follows:

## **INTRODUCTION**

This civil action arises from an incident that occurred on or about October 23, 2020, during the wrongful stop, arrest and use of force on Plaintiff, BOWMAN, as he was being detained for a traffic stop. Defendants HARVEY, GOHDE, and DRAGO used unreasonable and excessive force against BOWMAN when they forcibly detained him, inappropriately threatened lethal force, and used lethal force without proper justification. HARVEY released DRAGO to attack BOWMAN resulting in a debilitating leg injury. They then failed to provide him with proper medical care.

BOWMAN, brings state negligence and federal constitutional claims against Defendants HARVEY, GOHDE, and DRAGO, in their individual capacities, for committing acts under color of law that deprived Plaintiff of his rights under the Constitution and the laws of the State of Florida, by using excessive and unreasonable force against the Plaintiff during his wrongful arrest and handcuffing. Further, Plaintiff brings state negligence and federal constitutional claims against SHERIFF HUNTER as the supervisory entity responsible for the conduct, training, and supervision of the Sheriff's Deputies under its charge, as well as the unconstitutional pattern and practice of unconstitutional use of force. SHERIFF HUNTER failed to properly train Sheriff's Deputies in the appropriate methods, proper procedures, and protocols with respect to the use of force when conducting an arrest. SHERIFF HUNTER has a policy and customs that constituted deliberate indifference to the Plaintiff's constitutional rights, and SHERIFF HUNTER's policy and customs deprived the Plaintiff of his rights under the Constitution and the laws of the State of Florida, resulting in the use of excessive and unreasonable force

during the Plaintiff's wrongful arrest. Lastly, Plaintiff brings a negligent retention claim against SHERIFF HUNTER for retaining Defendants HARVEY, GOHDE, and DRAGO, given their history of internal affairs complaints.

## JURISDICTION, PARTIES AND VENUE

1.      This is an action for damages in tort as well as deprivation of civil rights guaranteed by the United States Constitution via 42 U.S.C. Sections 1983 and 1988, 4th and 14th Amendments of the U.S. Constitution and Florida state law claims, pursuant to the laws of the State of Florida.

2.      The Court has federal question jurisdiction over Plaintiff's federal law claims, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). Plaintiff's state law claims are related to these federal claims and form a part of the same case or controversy. The Court accordingly has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in the Middle District Court of Florida, pursuant to 28 U.S.C. § 1391(b), as all Defendants work and/or reside in this District, and all of the acts and omissions giving rise to this action occurred in Columbia County.

4.      All conditions precedent to the maintenance of this action, including those set forth in Florida Statute §768.28, have been performed, have occurred prior to its institution, or  have been waived.

5.      Plaintiff, BOWMAN is an adult resident of Columbia County, Florida. All material incidents occurred in Columbia County, Florida.

6.    Defendant SHERIFF HUNTER, was at all times relevant, the elected Sheriff of COLUMBIA COUNTY SHERIFF'S OFFICE ("CCSO") and was responsible for overseeing the CCSO, the governmental entity responsible for providing law enforcement services in and around Lake City, Columbia County, Florida. SHERIFF HUNTER is sued herein in his official capacity as Sheriff of CCSO.

7.    SHERIFF HUNTER, in his official capacity as Columbia County Sheriff, is liable for any injury or death suffered as a result of any act, event, or omission of an action occurring within the scope of employment of any officer, employee, or agent of CCSO, unless such officer, employee, or agent acted in bad faith or with malicious purpose exhibiting wanton and willful disregard of human rights or safety.

8.    At all times material hereto, Defendant HARVEY was a resident of Columbia County, Florida and committed the acts and omissions contained herein in Columbia County, Florida.  At all times material, Defendant HARVEY was employed by CCSO as a law enforcement officer and was acting in conformance with CCSO's policies and procedures and under the color of state law.

9.    At all times material hereto, Defendant GOHDE was a resident of Columbia County, Florida and committed the acts and omissions contained herein in Columbia County, Florida.  At all times material, Defendant GOHDE was employed by CCSO as a law enforcement officer and was acting in conformance with CCSO's policies and procedures and under the color of state law.

10.     At all times material hereto, Defendant DRAGO, was a police dog, which was owned, trained and operated by COLUMBIA COUNTY SHERIFF'S OFFICE and HARVEY. As such, DRAGO is sued by and through CCSO and HARVEY. However, DRAGO, maintained a separate file and was referred to as a law enforcement officer. In addition to federal civil rights violations, the owners, trainers and operators are liable under Section 767.04, Florida Statutes.

## FACTUAL ALLEGATIONS

11.     On or about October 23, 2020, officers HARVEY and GOHDE were at the intersection of Pine Grove and US 441 when they saw a white Dodge Charger heading North Bound with what they believed to be legally deficient tail lights.

12.     On the day of the incident, HARVEY was an agent of the Columbia County Sheriff's Office, and was in the course and scope of his employment as a field training officer, whom was tasked with training Deputy GOHDE, who was on day one (1) of her second phase of the on-scene training.

13.     The driver of the Charger was BOWMAN. BOWMAN had two passengers in his vehicle at the time, D. Jones and N. Janigan.

14.     In the dash camera video, brake lights and turn indicators are visible as BOWMAN turned down McGregor Street where he lives. It was not until BOWMAN initiated this turn that HARVEY blue lighted BOWMAN.

15.    As the BOWMAN vehicle traveled slowly down the dark road, HARVEY exclaimed, "Get that tag number!"  DRAGO was excitely panting and whimpering in the back ground.

16.    No streetlights can be seen for several more blocks before BOWMAN turned on his left turn signal to turn into his lit driveway and stop.

17.    Despite the low rate of speed and turn indicator, HARVEY, shouted, "He's probably going to try to bail." He later said he contemplated a pit maneuver and striking the car, despite there not being legal justification for same.

18.    It was not until BOWMAN initiated his turn with his turn signal on that HARVEY blue lighted him. Hethen used the siren after following BOWMAN for a few minutes.  At no point did HARVEY use his speaker to get BOWMAN's attention or direct BOWMAN to stop.

19.    BOWMAN did not feel safe stopping in an unlit area with no shoulder. Furthermore, BOWMAN did not have the ability to pull over on McGregor Road due to safety concerns and the inability to pull over into a ditch. As such, BOWMAN slowed his rate of speed and drove the short distance to the well-lit area of his mother's home. His mother's home was less than a fourth of a mile from the point in which the officers turned on their lights.

20.    Additionally, BOWMAN was concerned about interacting with law enforcement at night in a dark and secluded area given the current racial tensions between law enforcement officers and people of color.

21.    Once BOWMAN drove the short distance to his mother's residence, he parked his vehicle. Both officers immediately exited their vehicle with their deadly weapons drawn.

22.    HARVEY positioned his vehicle such that the dash camera did not capture the subsequent events. Audio captured HARVEY as he screamed, "Driver stop!" despite the fact that BOWMAN's vehicle was stopped and the fact that HARVEY parked in a way that prevented BOWMAN from moving the vehicle.

23.    BOWMAN rolled his window down and asked, "What you mad for?" HARVEY screamed, "Driver stop!" and "Stop right now!"

24.    At this point, BOWMAN, seeing guns pointed at him for unknown reasons, asked, "Are you going to shoot me?". HARVEY screamed again, "Stop! Put your hands out the window!" This exchange was repeated.

25.    In one moment, HARVEY commanded BOWMAN to put his hands out of the window, in the next moment HARVEY gave an adverse, conflicting command, "Do not move!" HARVEY asked, "Do you understand me?"

26.    BOWMAN asked the officers if he was going to be shot and said that was his only concern; fear of being shot. BOWMAN's question was never answered.

27.    HARVEY requested assistance and yelled, "Keep your hands where I can see them!" BOWMAN replied, "See my hands?" while continuing to ask if he was going to be shot.

28.    BOWMAN asked someone in the car to record the events.

29.    HARVEY then shouted, "Driver! Driver!" BOWMAN responded, "What's up?" HARVEY screamed, "Step out of the vehicle slowly!" BOWMAN politely asked again whether he was going to be shot.

30.    BOWMAN was fear stricken and attempted to de-escalate the situation.  He pleaded, "Listen to me… come here. Come get me, bro. You're not going to shoot me?" HARVEY nonsensically threatens, "I will release my dog if you do not step out of the vehicle!"

31.    BOWMAN told HARVEY that this was his house, "big bro" and that he did not want to be shot. BOWMAN continued to plead, "Y'all got the red beams on me for what?" and "What you got a gun on me for?" and, "Why do you got a gun pointed at me, bro?" and, "That's disrespectful, bro."

32.    Once again, HARVEY gave conflicting commands; instructing BOWMAN to "Stop" while simultaneously demanding he get out of the car.  Confused, BOWMAN asked, "You want me to get out?"

33.    BOWMAN attempts to anxiously abide by the mixed commands as best as he could. HARVEY then shouted that BOWMAN should not be facing him.

34.    At this point, BOWMAN became afraid of the police dog, who was panting and erratically waiting on release.

35.    HARVEY yelled, "Last Warning! You better…" HARVEY did not finish the command before he screamed, "K9, 9, 9, 9, 9, 9." The sound of the attack and BOWMAN's screams follow.

36.    Moments after, GHODE alerted, "Dog has been released." BOWMAN pleaded while screaming, "Please, bro, my leg. Help me!"

37.    Once BOWMAN was handcuffed, HARVEY approached the two witnesses, who were now handcuffed, and lead them into his narrative and said, "It's TV. It's all these on TV. That's what I was gonna... Everybody wants…" HARVEY's words end.

38.    In testimony provided during the related criminal case for "fleeing and eluding," HARVEY stated he merely believed that he may have asked BOWMAN why he traveled at a reduced speed, but was not certain.

39.    Additionally, HARVEY testified that he did not believe BOWMAN was eluding police. (Harvey Dep. 36:20-23.)

40.    According to testimony by HARVEY, as it pertained to identifying themselves as police officers, "I believe we did. We was yelling at him, telling him to – I think we had. Don't quote me on that." (Harvey Dep. 48: 25-49-2.) This response further reaffirms that HARVEY knew the procedures, but in the heat of the moment was unable to adopt them, even in the presence of a trainee.

41.    HARVEY reaffirmed that BOWMAN did stop, voluntarily, on his own free volition, as it pertained to the traffic stop.

42.    Terrified of the officers, BOWMAN repeatedly asked the officers if they were going to shoot him. He asked this question approximately eight times. HARVEY and GOHDE never provided an answer to any of BOWMAN's questions. They also never identified the reason for the traffic stop or identified themselves as law enforcement.

43.    Per the General Offense Report that was written by HARVEY, when asked if his or BOWMAN's statements were verbatim or paraphrased? Harvey stated, "It's as close to it as I can get that I can remember how it was being said." (Harvey Dep. 55:1-2.)

44.    HARVEY was asked why his report contradicted BOWMAN's words in the video? "It was only as close as I could remember it." (Harvey Dep. 55: 12-13.)

45.    As HARVEY was asked about de-escalation training, as it equates to it being a one-way or two-way street, HARVEY stated, "It could. But in this situation, there was just comply so we can get this done. Comply and come back is what my thinking was." (Harvey Dep. 61:17-19.)

46.    DRAGO mauled BOWMAN, biting his left leg around the calve area; latching on for several minutes.

47.    When reviewing the dash camera footage, BOWMAN can be heard screaming and pleading for help and for the officer to remove DRAGO.

48.    Additionally, Officer Harvey proceeded to tell BOWMAN to put his hands behind his back, as DRAGO continued to viciously maul BOWMAN.

49.    HARVEY forcibly handcuffed BOWMAN and it was not until after that he finally removed DRAGO from the apprehension.

50.     Nothing was done by either officer to render medical attention or actively stop the vicious attack. Little to no medical assistance was given at the scene either.

51.     BOWMAN was eventually transported to Lake City Medical Center for further evaluation. However, he refused medical treatment at that time. The law enforcement officers' presence during BOWMAN's evaluation made him uncomfortable. As such, he preferred to seek treatment independent of the care provided by the offending officers.

52.     After the doctor examined BOWMAN's injuries and noted the severity, BOWMAN was to be released from the Sheriff's Office custody and turned over to medical personnel at Lake City Medical Center.

53.     It is important to note, after a likely illegal inventory search of BOWMAN's vehicle, an **unopened** bottle of liquor was located in the back seat.(emphasis added) There were <u>no</u> weapons, firearms, drugs, or drug paraphernalia recovered from the vehicle.

54.     During HARVEY's deposition, he was asked if it is expected for a person to place their hands behind their back while simultaneously being apprehended by DRAGO.  HARVEY testified that, "It's not protocol. But we're going to put that subject's hands behind their back so they can't get to anything else." (Harvey Dep. at 85: 14-86:1.)

55.     No one was arrested that night. As seen on the dash camera, BOWMAN was not Mirandized. HARVEY was asked about this specifically, "Did you arrest Mr.

Bowman on any charge that night?" HARVEY responded, "Yes. The fleeing and eluding, on the resisting without, I believe, and the DUI." (Harvey Dep. 70:9-15.) HARVEY could not recall whether BOWMAN had his Miranda rights formerly read to him during a training exercise. BOWMAN left the scene by ambulance.

56.    Due to the HARVEY, GOHDE, and DRAGO's excessive force and unconstitutional actions and inactions, BOWMAN had to endure multiple surgeries requiring a skin graft. BOWMAN is permanently disfigured and suffers from a lack of full mobility as a result of this incident. Moreover, this incident has caused BOWMAN severe emotional distress.

## BAD FAITH CRIMINAL PROSECUTION

57.    On October 23, 2020, BOWMAN appeared to have mistakenly not turned his head and tail lights on, as noted above. That was the only issue and this would normally result in a friendly reminder or warning. Instead, a felony stop was inexplicably initiated while BOWMAN was on a short, dark road, on the way to his well-lit residence. BOWMAN was not evading.

58.    BOWMAN did not consent to a search; nor was he asked. He did not want to get out of the car until he had some assurance that he was safe, however he was forced out of his vehicle at gunpoint.

59.    On, October 24, 2020, BOWMAN went to the hospital. No alcohol was found in his system. BOWMAN admitted to medical professionals that he was in fear and told them about the lack of safety of the situation.

60.    On January 11, 2021, a Florida Highway Patrol officer pulled BOWMAN over in a separate incident for violation of a right of way / running a stop sign. He was also cited for failure to wear a seatbelt. The Right of Way citation and the seatbelt citation were docketed in separate cases.    The Case number for the stop sign case is 122021TR000225TRAXMX.  The seat belt case number is 122021TR000234TRAXMX. BOWMAN's license was suspended as he accidentally missed the court date. He paid the fine and the restriction was cleared on March 26, 2021. This case is still, to this day, being used against him in an effort to make him plea to the fleeing and eluding charge.

61.    On January 21, 2021, BOWMAN served a Notice of Intent to Sue, which was followed by First Amendment use of the media to report this incident.

62.    On January 21, 2021, three months after the subject incident, with zero supporting evidence, BOWMAN was mysteriously charged with Driving Under the Influence. The criminal charges for an unsupportable DUI charge were filed on the day the notice of intent to sue was served.

63.    On February 17, 2021, the State working closely with local law enforcement (now admittedly), also mistakenly charged BOWMAN under Florida Statute 322.34(2)(b), alleging a prior driver's license suspension, which did not exist.

64.    On May 18, 2021, after Defendant's position on the DUI was known, the State charged BOWMAN with fleeing to elude a law enforcement officer on a now seven-month-old incident. Not coincidentally, after medical records were provided, the DUI was proven to be legally unjustified, showing Columbia County Sheriff's Office and HARVEY were falsely accusing BOWMAN of crime he did not commit.

65.    On June 9, 2021, the DUI was dismissed.

66.    On May 23, 2022, the State admitted to the error, stating, "The case referenced in the Information was one in which Mr. Bowman was a witness and it showed up on his prior record in a way in which it was misinterpreted that he was the defendant in that case." The State was expecting to downgrade the charges.

67.    HARVEY filled out a DUI report pursuant to his alleged observation of BOWMAN, consisting of bloodshot, red and watery eyes. When questioned whether that could be attributed to crying out, being bitten by a dog, or alcohol, his response was that, "it's speculation. I mean, you could say that." (Harvey Dep. 71:16-17.)

68.    HARVEY was asked about the status of the warrant that was filed following BOWMAN's hospital visit, and the response was, "I never looked for one. I don't think there was one issued." (Harvey Dep. 73: 22-23.)

69.    A deposition was conducted for Deputy GOHDE who was an agent of the Columbia County Sheriff's Office, and was in the course and scope of her employment during the incident in question. GOHDE was asked about reasons that people might not comply and stop immediately based upon lights and sirens being present. She stated, "people have advised that they were in fear and they were trying to find a lighted area." (Gohde Dep. 18: 21-19: 2.)

70.    GOHDE was questioned about the reason they took BOWMAN to Lake City Medical, and it was her testimony that, "At that point he was in our custody. Well, and by that I don't mean arrested. He was detained for the investigation and to further investigate whether it was a DUI or not." (Godhe Dep. 41: 2-5.)

## DEPUTY DAVID HARVEY

71.    HARVEY's now locked-down and sanitized Facebook account contained disclosures that he was a "K9 Handler at Columbia County Sheriff's Office." (*See Exhibit A*.)

72.    HARVEY's profile photo in 2018 was of himself with a tactical assault rifle and his K9 DRAGO underneath him, with the caption, "That Beast Mode!" (*See Exhibit B*.)

73.    According to Merriam-Webster Dictionary, "*Beast mode* refers to the aggressive, animalistic persona that one might assume when in competition or combat in order to overpower an opponent."

74.    In 2016, HARVEY posted a graphic with blue highlights and an armed illustrated figure, stating, "They hate the sheepdog, until the wolf is at their doorstep." (*See Exhibit C*.)

75.    In a 2017, HARVEY updated his profile to an African American and people laughed and joked about it. (*See Exhibit D*.)

76.    In 2016, Harvey invoked a Bible verse in a blue line / blue lives matter meme which said, "For he is the minister of God of thee for good. But if thou do which is evil, be afraid; for He beareth not the sword in vain; He is the minister of good. A revenger to execute wrath upon him that doeth evil." (*See Exhibit E*.)

77.    On 2018, HARVEY posted a meme of the skeleton of a dog with a blue line, which said, "K-9 Unit." (*See Exhibit F*.)

78.    In another post, HARVEY tagged an individual named Chris David, and posted, "7 days out of this patrol car for some mind recalibration got me motivated to do some hood rat things wid my hood rat friends! Chris, Let's get it duuuude!" (*See Exhibit G.*)

79.    Around the time of that post, HARVEY also posted something with the word, "Gangstas!" and noted he was, "on dees streets in my patrol car!" A friend told him to "take a bite out of crime." (*See Exhibit H.*)

## PATTERN AND PRACTICE

80.    These posts are not limited to HARVEY. Merely searching HARVEY's friends list revealed a host of deputies at the CCSO with similar public personas of aggression and offensive commentary.

81.    PACER, the index of federal lawsuits, reveals a history of systemic abuse and constitutional rights violations.

82.    Prior to the subject incident, on or about August 17, 2017, Defendant HARVEY previously exercised improper judgment as it pertains to police tactics, despite the training that had been set in place. This encounter shares similar injury as a result of circumventing instilled de-escalation training that each candidate must adopt.

83.    These training courses are designed to prevent unnecessary harm which stems from excessive police force. HARVEY, similarly, elected not to properly communicate with a suspect, which resulted in the unjustified use of a taser, despite proper paperwork in his possession, which would have absolved the suspect of any

inequitable conduct. The Administrative Inquiry, conducted by Internal Affairs ("I.A."), determined that this egregious behavior could have been alleviated had an open line of communication remained constant. Despite no formal charges having been brought, I.A. did not infer that the claim was without warrant or deemed frivolous, that same inequitable conduct that went unpunished, was doomed to repeat itself. Those facts are in direct correlation with the present resulting injuries, which continue to stem from utterly poor decision making.  This systemic way of behavior is ingrained in certain members of the police force, and which will be allowed to continue in perpetuity absent justice.

84.    HARVEY has retained the knowledge provided by the training courses required by the state, as it pertained to diversity sensitivity training, traffic-stop procedure, general orders purpose and field training officer duties, but has repeatedly lacked the ability to implement these procedures fluidly in the field.

85.    HARVEY's testimony as it pertains to speed of a potential suspect, "Speeds on a pursuit is not a factor," when following a suspect. (Harvey Dep. 27: L.)

86.    When it comes to police dogs, they are treated like officers. In fact, their work is tracked in great detail. With the retirement of one recent police dog, CCSO noted on its Facebook page, "Rek began his career in August of 2014 and has left his mark on the safety and security of our community. Rek has been deployed 440 times, making 73 apprehensions, locating dozens of lost or endangered citizens, and locating 9 lbs. of powder cocaine, 10.5 lbs. of methamphetamine, 3.5 lbs. of heroin, 3 lbs. of MDMA,

78 lbs. of marijuana, and 1 lb of crack cocaine. Along with his drug seizures, Rek has located numerous items of evidence that were discarded by suspects in attempts to hide their crimes."

87.     We requested similar information for DRAGO, but did not receive same.

## ALLEGATIONS AGAINST SHERIFF HUNTER

88.     On a daily basis, Deputy Sheriffs come into contact with citizens during their patrolling duties. Despite this daily contact, Defendant SHERIFF HUNTER made no effort to adequately train and supervise said deputies. In order to adequately deal with the certainty of police contact with citizens, SHERIFF HUNTER is charged with supplying the public with a police force that is adequately trained and equipped to handle calls dealing with those who are non-violently not complying.

89. SHERIFF HUNTER was aware that there needed to be effective supervision and a command structure in place to deal with the problem of responding to incidents with non-threatening eyewitnesses. SHERIFF HUNTER failed to provide adequate supervision of its deputies in the field when said deputies encountered those who are non-threatening.

90.     At all times material hereto, SHERIFF HUNTER was responsible for adopting and implementing the rules and regulations specifically in relation to hiring, screening, training, supervising,controlling, disciplining, and assigning deputies to their respective duties within Columbia County, Florida.

91.    SHERIFF HUNTER has maintained a custom of excessive force in executing arrests by its sworn law enforcement officers. At all times material hereto, under SHERIFF HUNTER policy pertaining to Use of Non-Deadly/Less Lethal Force, officers may use only the amount of force reasonably necessary to effect lawful objectives.

92.    SHERIFF HUNTER's actions in these case, and previous similar situations, indicates a policy and custom of indifference to the rights of those they arrest who are non-threatening and a failure to properly train and/or supervise their officers in how to deal with non-threatening eyewitnesses being arrested. SHERIFF HUNTER's refusal to adequately train its deputies on how to interact with citizens and SHERIFF HUNTER's failure to supervise those deputies, has resulted in the infliction of excessive violence upon non-threatening eyewitnesses and the violation of their constitutional rights. This lack of training and supervision causes these ill-trained and ill-equipped deputies to resort to the use of excessive force as their only alternative.

93.    SHERIFF HUNTER's deputies have increasingly attempted to justify the utilization of deadly and excessive force at an alarming rate, creating situations where the use of such force was entirely unjustified and such conduct created unreasonable dangers that would otherwise not have existed, as each stemmed from a lack of proper decision-making. There has specifically been an increasing and alarming number of similar incidents where SHERIFF HUNTER's deputies have falsely arrested members of the public and/or seriously injured or endangered the public by the intentional and/or negligent misconduct of SHERIFF HUNTER's deputies. A review of the Internal Affairs Investigations of these

incidents shows a conscious disregard to the facts and circumstances surrounding each incident and a blanket improper justification of the actions of the deputies involved.

94.     Further, there has been a pattern of similar incidents in which citizens were falsely arrested, injured, or endangered by the intentional and/or negligent misconduct of SHERIFF HUNTER's officers, revealing serious incompetence and/or misbehavior that is widespread throughout the department.

95.     Examples of the above referenced pattern of similar incidents that occurred prior to the incident alleged in this Complaint are as follow:

96.     Civilian complaints about Deputy HARVEY's excessive force practices began to surface as early as 2017. Terry L. Calloway Jr. complained when he was tased by HARVEY on or about August, 17, 2017.

97.     SHERIFF HUNTER has maintained a long-standing, widespread history of failure to train, supervise, or otherwise discipline its police officers for, among other things, the use of excessive force, unlawful detentions, and/or arrests even though it had notice of this unlawful conduct by its employees and the public.

98.     SHERIFF HUNTER has maintained a system of review for abuses of lawful authority like the illegal use of force, unlawful detention, and/or arrests, among other things, by sworn law enforcement officers and complaints thereof, which has failed to identify improper use of force by police officers and to subject police officers who employed such acts to appropriate discipline, closer supervision, and/or retaining, to the

extent that it has become the de facto policy and custom of SHERIFF HUNTER to tolerate such acts by its officers.

99.    Indeed, SHERIFF HUNTER routinely performs cursory investigations of incidents involving extremely questionable use of excessive force on the part of SHERIFF HUNTER's deputies, with an eye toward exonerating the deputy involved rather than finding out the truth. Almost uniformly, investigators and supervisors uncritically endorse the deputies' versions of events, even when those versions are incomplete, inconsistent, or are in direct contradiction of objective evidence. The result is that these incidents involving questionable use of force are not properly and impartially investigated, documented, or addressed with an application of corrective measures where warranted.

100.    Due to this intentionally inadequate investigative process, in virtually all excessive force incidents, SHERIFF HUNTER has declared the conduct of its deputies to be justified, particularly in those involving non-threatening eyewitnesses.

101.    SHERIFF HUNTER's foregoing acts, omissions, policies, or customs caused law enforcement officers, including Defendants HARVEY, GOHDE, and DRAGO to believe that acts such as the improper use of force, unlawful detentions, unlawful arrests and the improper handling of incidents involving detained citizens, would not be properly investigated. The consistent lack of accountability within SHERIFF HUNTER for the questionable and often unjustifiable use of excessive force has promoted an acceptance of disproportionate, aggressive, and unconstitutional behavior towards ordinary citizens. The resulting culture of aggression both promotes and condones intimidating

and harsh approaches toward the public, with the excessive use of force as a frequent and foreseeable outcome.

102.   Despite SHERIFF HUNTER's notice and knowledge of the dangerous propensities of their sworn law enforcement officers because of said officers' lack of training, skill and/or experience, SHERIFF HUNTER failed to implement any policies or programs to train said officers or otherwise intentionally failed to protect the public, including the Plaintiff, from its danger.

103.   SHERIFF HUNTER had policies, customs, and practices that constituted deliberate indifference to Plaintiffs Constitutional Rights pursuant to the Fourth and Fourteenth Amendments, and SHERIFF HUNTER's policies and customs caused the violation of Plaintiff's rights and/or was the moving force behind such Constitutional violations as indicated by the facts described above.

104.   The policies, customs, and practices complained of include, but are not limited to, the following:

a.   Deliberate indifference by failing to institute an appropriate policy for the detention of non--threatening eyewitnesses and by failing to enforce such a policy, if such a policy was in place;

b.   Deliberate indifference by failing to ensure that SHERIFF HUNTER employees were sufficiently trained or otherwise educated in the extension and management of non-threatening eyewitnesses from the perspective of the arresting officer(s), dispatch officers and supervising or managing officers;

c.   Deliberate indifference by failing to provide sufficient supervision of the arrest in question and by failing to monitor the arrest in question;

d.   Deliberate indifference by improperly training SHERIFF HUNTER's  Deputies in such a way that condones, encourages, and permits their officers and agents to violate the rights and inflict harm upon persons being arrested;

    e.    Deliberate indifference by improperly training SHERIFF HUNTER Deputies in such a way that condones, encourages, and permits their officers and agents to violate the rights and inflict harm upon arrested persons;

    f.    Deliberate indifference in failing to properly supervise SHERIFF HUNTER's deputies in their encounters with persons they arrest;

    g.    Deliberate indifference in failing to have Deputies properly reviewed for accurate use of force of incidents involving force used against arrested persons, with conclusions frequently permitted to be drawn on the basis of clearly incorrect or contradictory information; and

    h.    Deliberate indifference in failing to determine whether said employees, including Defendants HARVEY, GOHDE, and DRAGO posed a threat to the public as a result of their propensity to commit unlawful acts.

105. The Defendant SHERIFF HUNTER was grossly and willfully negligent in the selection and/or training and/or supervision and/or retention of Defendants HARVEY, GOHDE and DRAGO as sworn law enforcement officers of the Defendant SHERIFF HUNTER, in that:

    a.    It appointed said Defendants as sworn law enforcement officers when it knew or, in the exercise of reasonable care, should have known of the Defendants' dispositions to engage in such unlawful conduct.

    b.    Despite the fact that it knew or should have known that this pattern of conduct was being carried out by its agents and employees, SHERIFF HUNTER has failed to and refused to: (1) remove Defendants HARVEY, GOHDE, and DRAGO from their positions as sworn law enforcement officers; (2) take any disciplinary action against said Defendants; and (3) provide redress for citizens, such as the Plaintiff, who have been injured thereby.

106. SHERIFF HUNTER's deliberate indifference, failure to train, failure to effectively supervise, and its permission (and toleration of) the patterns and practices

enumerated above, were the moving forces causing the serious injuries to Plaintiff and the violation of Plaintiff's Constitutional Rights.

107.    The actions of Defendants HARVEY, GOHDE, and DRAGO in this case, as well as the actions of Defendant SHERIFF HUNTER in other similar situations, indicate that the officers who violated BOWMAN's rights acted in accordance with SHERIFF HUNTER's policies and reflect policies that were adopted by SHERIFF HUNTER and their high-ranking officials.

## COUNT I: 42 U.S.C. § 1983 – EXCESSIVE USE OF FORCE BY OFFICER HARVEY

108.    Plaintiff hereby realleges and incorporates by reference paragraphs 1- 56 in this complaint as though fully set forth herein.

109.    The force used by Defendant HARVEY against Plaintiff during the course of Plaintiff's arrest was objectively inhuman and unnecessary, and constituted the unreasonable and excessive use of force in violation of Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

110.    Defendant HARVEY used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, HARVEY returned his non-lethal taser to its holster to retrieve DRAGO. DRAGO mauled BOWMAN without command and DRAGO was allowed to continue to maul BOWMAN until he was handcuffed despite BOWMAN being under their complete control.

111.    Defendant HARVEY committed the acts described hereinabove in a gross disregard of Plaintiff's constitutional rights while acting under color of law, and specifically deprived Plaintiff of his constitutional right to be free from excessive police force under the Fourth Amendment.

112.    As a result of Defendant HARVEY's outrageous conduct, Plaintiff required immediate medical care.

113.    As a further direct and proximate result of Defendant HARVEY's conduct, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulted in pain and suffering, mental anguish, and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a.    Judgment for compensatory damages in excess of $100,000.00;

b.    Judgment for exemplary or punitive damages;

c.    Cost of suit;

d.    Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.    Trial by jury as to all issues so triable; and

f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II: 42 U.S.C. § 1983 – EXCESSIVE USE OF FORCE BY OFFICER GOHDE

114.   Plaintiff hereby incorporates by reference paragraphs 1-56 as though folly set forth herein.

115.   Defendant GOHDE used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, she assisted HARVEY as he returned his non-lethal laser to its holster to retrieve DRAGO. DRAGO mauled BOWMAN without command and DRAGO was allowed to continue to maul BOWMAN until he was handcuffed despite BOWMAN being under their complete physical control. GOHDE did not intervene and/or stop HARVEY and/or DRAGO from inflicting unnecessary force upon BOWMAN.

116.   Defendant GOHDE committed the acts described hereinabove in a gross disregard of Plaintiff's constitutional rights while acting under color of law, and specifically deprived Plaintiff of his constitutional right to be free from excessive police force under the Fourth Amendment.

117.   As a result of Defendant GOHDE's outrageous conduct and failure to act, Plaintiff required immediate medical care.

118.   As a further direct and proximate result of Defendant GOHDE's conduct, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing, and Plaintiff will continue

to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

      a.      Judgment for compensatory damages in excess of $100,000.00;

      b.      Judgment for exemplary or punitive damages;

      c.      Cost of suit;

      d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

      e.      Trial by jury as to all issues so triable; and

      f.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III: 42 U.S.C. § 1983 – EXCESSIVE USE OF FORCE BY DEFENDANT DRAGO

119.   Plaintiff incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

120.   The force used by Defendant DRAGO against Plaintiff during the course of Plaintiff's arrest was objectively inhuman and unnecessary, and constituted the unreasonable and excessive use of force in violation of Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

121.   Defendant DRAGO used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for

the safety of the general public, he disobeyed the orders of his handler, Deputy HARVEY, and attacked BOWMAN despite repeatedly being given the command "nien," which means no.

122.    Defendant DRAGO committed the acts described hereinabove in a gross disregard of Plaintiff's constitutional rights while acting under color of law, and specifically deprived Plaintiff of his constitutional right to be free from excessive police force under the Fourth Amendment.

123.    As a result of Defendant DRAGO's outrageous conduct, Plaintiff required immediate medical care.

124.    As a further direct and proximate result of Defendant DRAGO's conduct, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for additional treatment and care. These losses are either permanent  a n d / or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

        WHEREFORE, Plaintiff prays for the following relief:

        a.       Judgment for compensatory damages in excess of $100,000.00;

        b.       Judgment for exemplary or punitive damages;

        c.       Cost of suit;

        d.       Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

        e.       Trial by jury as to all issues so triable; and

    f.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV: 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE BY DEFENDANT SHERIFF HUNTER

125.   Plaintiff incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

126.   Defendant SHERIFF HUNTER violated the Plaintiff's Fourth Amendment rights by failing to train its deputies to reasonably respond to individuals using a reasonable amount of force and by engaging in policies and practices that caused constitutional violations to people by inappropriately responding with excessive force.

127.   These constitutional violations were caused by SHERIFF HUNTER's lack of training and supervision in regards to deputies having the ability and knowledge to appropriately interact with arrestees without causing serious physical injury.

128.   Defendants HARVEY, GOHDE, and DRAGO knew or should have known to use force that was objectively reasonable in light of the totality of the circumstances.

129.   As a result of the outrageous conduct of SHERIFF HUNTER, Plaintiff required immediate emergency medical care.

130.   As a further direct and proximate result of the conduct of Defendant SHERIFF HUNTER, Plaintiff BOWMAN suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and

voluminous medical expenses for additional treatment and care. These losses are either permanent or continuing, and BOWMAN will continue to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a.    Judgment for compensatory damages in excess of $100,000.00;

b.    Judgment for exemplary or punitive damages;

c.    Cost of suit;

d.    Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.    Trial by jury as to all issues so triable; and

f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V 42 U.S.C. § 1983 CLAIM AGAINST SHERIFF HUNTER (FAILURE TO TRAIN AND SUPERVISE)

131.    Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

132. SHERIFF HUNTER's chief policy maker, Sheriff HUNTER, is responsible for the implementation and promulgation of official policies for CCSO, including policies for its deputies to follow when making arrests and the use of force when making arrests. Further, Sheriff HUNTER is responsible for the promulgation of

policies and the implementation of training to maintain an effective police force that is capable and prepared to deal with all members of the public.

133. SHERIFF HUNTER was deliberately indifferent to its responsibility to adequately prepare its deputies/officers for encounters with citizens under investigation and for their interaction with, detention, and arrest of the same.

134. SHERIFF HUNTER is charged with properly training officers with the available and necessary non-deadly-force skills that would allow officers to investigate a situation also maintain their own safety.

135. SHERIFF HUNTER was deliberately indifferent to its responsibility to create an effectively trained police force that could adequately respond to the scene of encounters. All of the conduct at the scene to investigate the Plaintiff's situation was contrary to established police methods. Thus, there were no sufficiently trained deputies available to reasonably and effectively deal with the Plaintiff's situation. All of the acts and omissions of the insufficiently trained officers were inappropriate to the situation and caused the encounter to be escalated.

136. Further, the officers were not provided with sufficiently detailed policies and procedures to use in investigating a situation involving non-threatening eyewitnesses. These officers did not have the adequate direction or assistance with which to respond to the incident that occurred on October 23, 2020.

137. All of the above referenced failures are the responsibility of SHERIFF HUNTER, which was deliberately indifferent to its responsibility to have appropriate

policies and procedures in place and to train and supervise officers employed by SHERIFF HUNTER to deal with the public.

138.   As a further direct and proximate result of the conduct described above, Plaintiff BOWMAN suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for additional treatment and care. These losses are either permanent or continuing, and BOWMAN will continue to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a.      Judgment for compensatory damages in excess of $100,000.00;

b.      Judgment for exemplary or punitive damages;

c.      Cost of suit;

d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.      Trial by jury as to all issues so triable; and

f.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VI: NEGLIGENCE – HARVEY

139.   Plaintiff incorporates by reference paragraphs 1-56 as if fully set forth herein.

140.   When Plaintiff was ordered out of the vehicle by show of force, he was under complete control of HARVEY, which was tantamount to being in his custody.

141.    HARVEY owed Plaintiff a duty of reasonable care.

142.    HARVEY breached his duty of care, in one of more of the following ways:

      a.     failing to keep control over his K-9 so as not to inflict severe injuries;

      b.     failing to properly train his K-9 to abide by voice commands to release BOWMAN;

      c.     failing to properly train his K-9 to abide by lead commands to release BOWMAN; and/or

      d.     deploying his K-9 under the facts and circumstances presented;

143.    As a direct and proximate result of HARVEY's negligence, Plaintiff suffered bodily injury, scarring, humiliation, embarrassment, physical and mental pain and anguish, as well as other forms of physical and emotional damages.

144.    SHERIFF HUNTER, in his official capacity as Columbia County Sheriff, through his employee, is responsible for the negligence acts and omissions of his Deputy Sheriff, HARVEY.

**COUNT VII: BATTERY AGAINST DEPUTY HARVEY**

145.    Plaintiff incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

146.    Defendant HARVEY acted against BOWMAN when he used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, HARVEY returned his non-lethal taser to its holster to retrieve DRAGO. DRAGO mauled BOWMAN without command and DRAGO was allowed to continue to maul BOWMAN until he was handcuffed despite BOWMAN being under their complete physical control.

147.   As a further direct and proximate result of the conduct described above, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for treatment and care. These losses are either permanent or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

a.    Judgment for compensatory damages in excess of $100,000.00;

b.    Judgment for exemplary or punitive damages;

c.    Cost of suit;

d.    Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.    Trial by jury as to all issues so triable; and

f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VIII BATTERY AGAINST OFFICER GOHDE

148.   Plaintiff incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

149.  Defendant GOHDE acted against BOWMAN when she used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, she assisted HARVEY by holding BOWMAN at gun point while DRAGO mauled BOWMAN

without command, and allowed DRAGO to continue to maul BOWMAN until he was handcuffed despite BOWMAN being under their complete physical control.

150.    As a further direct and proximate result of the conduct described above, Plaintiff suffered a deprivation of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and voluminous medical expenses for additional treatment and care. These losses are either permanent or continuing, and Plaintiff will continue to suffer these losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff prays for the following relief:

    a.       Judgment for compensatory damages in excess of $100,000.00;

    b.       Judgment for exemplary or punitive damages;

    c.       Cost of suit;

    d.       Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

    e.       Trial by jury as to all issues so triable; and

    f.       Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IX: GROSS NEGLIGENCE AGAINST DEFENDANT SHERIFF HUNTER

151.    Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

152.    SHERIFF HUNTER's employed Defendants were engaged in the exercise of discharge of a governmental function. The conduct of SHERIFF HUNTER

amounted to gross negligence through its wanton and reckless disregard for proper training and supervision of its officers that was the proximate cause of BOWMAN's injuries and damages.

153.    HARVEY, GOHDE, AND DRAGO were working for Columbia County Sheriff, and the SHERIFF HUNTER at the time of the incident complained of herein and had a duty to perform their employment activities so as not to endanger or cause harm to Plaintiff.

154.    Notwithstanding these duties, SHERIFF HUNTER breached these duties with deliberate indifference and gross negligence and without regard to BOWMAN's rights and welfare by creating a work environment in which the excessive force practices of HARVEY, GOHDE, and DRAGO were viewed as acceptable and which caused serious injuries and damages to BOWMAN.

WHEREFORE, Plaintiff prays for the following relief:

      a.      Judgment for compensatory damages in excess of $100,000.00;

      b.      Judgment for exemplary or punitive damages;

      c.      Cost of suit;

      d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

      e.      Trial by jury as to all issues so triable; and

      f.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT X: 42 U.S.C §1983
## UNLAWFUL DETENTION/ ARREST CLAIM AGAINST OFFICER HARVEY, OFFICER GOHDE AND SHERIFF HUNTER

155.    Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

156.    Under the Fourth Amendment to the United States Constitution, BOWMAN has the right to not be arrested without probable cause.

157.    Defendants HARVEY and GOHDE intentionally committed acts that violated BOWMAN's constitutional right to not be arrested without probable cause.

158.    When Defendant HARVEY arrested BOWMAN, he did not know of any facts or circumstances that would cause a reasonable officer to believe that BOWMAN has committed, is committing, or is about to commit, an offense.

159.    Defendants HARVEY and GOHDE violated BOWMAN's Fourth Amendment right to be free from unlawful seizure when they detained, arrested and imprisoned BOWMAN for DUI and resisting arrest without probable cause.

160.    Defendant HARVEY's conduct caused BOWMAN to suffer multiple injuries including, but not limited to, economic losses, pain and suffering, and humiliation and these damages will continue into the foreseeable future.

161.    BOWMAN would not have suffered these injuries if it were not for Officer HARVEY's conduct.

162.    Officer HARVEY acted under the color of law in that each claimed to be performing an official duty, but his acts were outside the limits of lawful authority and

were abusive in a manner and acted in a way that misused his power and was able to do so only because he was an official.

163.    Based on information and belief, Officer HARVEY was deliberately acting in accordance with a CCSO pattern, practice, policy, or custom of conducting unlawful arrests.

164.    Defendant HARVEY's conduct, taken pursuant to CCSO's pattern, practice, policy or custom of unlawful arrests has resulted in in irreparable harm to BOWMAN and will continue to result in irreparable harm to all individuals who are stopped under certain circumstances.

165.    SHERIFF HUNTER is liable for the violations of BOWMAN's constitutional rights because he failed to institute a policy designed to ensure that officers under his supervision and control did not conduct unlawful arrests and/or detention of individuals.

WHEREFORE, Plaintiff prays for the following relief:

a.    Judgment for compensatory damages in excess of $100,000.00;

b.    Judgment for exemplary or punitive damages;

c.    Cost of suit;

d.    Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.    Trial by jury as to all issues so triable; and

f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT XI: UNLAWFUL DETENTION/ARREST (STATE LAW CLAIM)

166.    Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

167.    At all times relevant hereto, HARVEY and GOHDE were employees and/or agents of CCSO working in the course and scope of their employment.

168.    Defendants, HARVEY and GOHDE violated BOWMAN's Fourth Amendment right to be free from unlawful seizure when they detained and arrested BOWMAN for DUI and resisting without probable cause.

169.    As a proximate result of Defendants', HARVEY and GOHDE and each of their actions, BOWMAN suffered multiple injuries including, but not limited to, economic losses, pain and suffering, and humiliation and these damages will continue into the foreseeable future.

170.    SHERIFF HUNTER is liable for the violations of BOWMAN's constitutional rights because he failed to institute a policy designed to ensure that officers under his supervision and control did not conduct unlawful arrests and/or detention of individuals.

WHEREFORE, Plaintiff prays for the following relief:

    a.      Judgment for compensatory damages in excess of $100,000.00;

    b.      Judgment for exemplary or punitive damages;

    c.      Cost of suit;

    d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

    e.      Trial by jury as to all issues so triable; and

      f.      Such other relief as this Honorable Court may deem just and appropriate.

## **COUNT XII: MALICIOUS PROSECUTION-HARVEY**

171.  Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

172.  Defendant HARVEY wrongfully caused criminal proceedings to be instituted against Plaintiff BOWMAN with malice and absent probable cause, or arguable probable cause, by submitting police reports to prosecuting authorities containing false statements and/or material omission, and from which reports were relied on by prosecuting authorities.

173.  Based on the story that Defendant HARVEY fabricated, the State Attorney's Office brought a DUI charge against the Plaintiff. This charge was ultimately dismissed by the State.

174.   As a further direct and proximate result of the conduct described above, Plaintiff BOWMAN, suffered losses of his liberty and freedom and mental anguish and these damages will continue into the foreseeable future.

WHEREFORE, Plaintiff prays for the following relief:

      a.      Judgment for compensatory damages in excess of $100,000.00;

      b.      Judgment for exemplary or punitive damages;

      c.      Cost of suit;

      d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.      Trial by jury as to all issues so triable; and

f.      Such other relief as this Honorable Court may deem just and
appropriate.

## COUNT XIII: MALICIOUS PROSECUTION-GOHDE

175.    Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

176.    Defendant GOHDE wrongfully caused criminal proceedings to be instituted against Plaintiff BOWMAN with malice and absence probable cause, or arguable probable cause, by submitting police reports to prosecuting authorities containing false statements and/or material omission, and from which reports were relied on by prosecuting authorities.

177.    Based on the story that Defendant GOHDE fabricated, the State Attorney's Office brought a DUI charge against the Plaintiff. This charge was ultimately dismissed by the State.

178.    As a further direct and proximate result of the conduct described above, Plaintiff BOWMAN, suffered losses of his liberty and freedom and mental anguish and these damages will continue into the foreseeable future.

WHEREFORE, Plaintiff prays for the following relief:

a.      Judgment for compensatory damages in excess of $100,000.00;

b.      Judgment for exemplary or punitive damages;

c.      Cost of suit;

d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.  Trial by jury as to all issues so triable; and

f.  Such other relief as this Honorable Court may deem just and appropriate.

## COUNT XIV: STRICT LIABILITY

179.  Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

180.  Plaintiff adhered to the officer's request to pull over and step out of his vehicle on or about October 23, 2020.

181.  Since February 18, 2020, Defendant HARVEY was in exclusive control of K9 DRAGO, even outside the course and scope of its employment. K9 DRAGO cohabitated with Defendant HARVEY at his residence, since being commissioned by the Florida Law Enforcement Canine Enforcement Department.

182.  At all times material, K9 DRAGO was under the sole command of HARVEY.  While under his instruction, K9 DRAGO's vicious propensity resulted in a mauling of Plaintiff's extremity, without awaiting instruction.

183.  K9 DRAGO was not provoked or prompted, as he attacked BOWMAN which resulted in Plaintiff suffering permanent physical injury.

184.  As a direct and proximate result of the incident, Plaintiff, BOWMAN, suffered losses of his liberty and freedom and mental anguish and these damages will continue into the foreseeable future.

WHEREFORE, Plaintiff prays for the following relief:

a.      Judgment for compensatory damages in excess of $100,000.00;

b.      Judgment for exemplary or punitive damages;

c.      Cost of suit;

d.      Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

e.      Trial by jury as to all issues so triable; and

f.      Such other relief as this Honorable Court may deem just and appropriate.

### COUNT XV- GOVERNMENT ENTITY LIABILITY AGAINST SHERIFF HUNTER

185.    Plaintiff hereby incorporates paragraphs 1-56 in this complaint as though fully set forth herein.

186.    SHERIFF HUNTER, in his official capacity as Sheriff of CCSO, is liable for violating BOWMAN's constitutional rights because Officers HARVEY and GOHDE violated BOWMAN's constitutional rights.

187. SHERIFF HUNTER, in his official capacity as Sheriff of the CCSO, is liable for Officers HARVEY and GOHDE's conduct because CCSO's official policy or custom was the moving force behind BOWMAN's injuries.

188.    Officers HARVEY and GOHDE's conduct, taken pursuant to CCSO's pattern, practice, policy, or custom of falsely arresting individuals, using excessive force against individuals, and initiating malicious criminal proceedings against individuals has resulted in irreparable harm to BOWMAN and will continue to result in irreparable harm to all individuals under similar circumstances.

189.   Officers HARVEY and GOHDE acted pursuant to a CCSO's official policy of custom because:

a. CCSO created, adopted, or ratified a rule or regulation regarding actions to be taken in response to individuals stopped pursuant to a traffic stop, including but not limited to use of K9 Officers; and

b.  CCSO made a policy statement or decision regarding actions to be taken in response to individuals during a traffic stop, including but not limited to the use of K9 Officers.

190.   The official policy or custom existed because it was so persistent, widespread, and repetitious that CCSO's policy-maker either knew of it or should have known of it.

191. SHERIFF HUNTER is, and was at all relevant times, CCSO's policy maker.

192.   SHERIFF HUNTER is liable for the violations of BOWMAN's constitutional rights because he failed to institute a policy designed to ensure that officers under his supervision and control did not violate the rights of individuals by use of excessive force.

WHEREFORE, Plaintiff prays for the following relief:

a.      Judgment for compensatory damages in excess of $100,000.00;

b.      Judgment for exemplary or punitive damages;

c.      Cost of suit;

    d.       Reasonable attorney fees, pursuant to 42 U.S.C. § 1983;

    e.       Trial by jury as to all issues so triable; and

    f.       Such other relief as this Honorable Court may deem just and
appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, MARTINEZZ BOWMAN, individually demands a trial by jury, and judgment against DEFENDANTS COLUMBIA COUNTY, COLUMBIA COUNTY SHERIFF'S OFFICE, COLUMBIA COUNTY OFFICER DAVID HARVEY, in his individual and official capacity; COLUMBIA COUNTY DEPUTY JAYME GOHDE, in her individual and official capacity (Collectively "DEFENDANTS") for special damages, damages for past, present, and future medical expenses, compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity, together with attorney's fees and court costs and such other relief the as the Court may deem just and proper.

Dated this 17th day of May, 2022.

Respectfully submitted,

**Law Office of Phillips & Hunt**

 */s/ John M. Phillips*_____
**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar Number:  0477575
**AMY HANNA, ESQUIRE**
Florida Bar Number:  120471
**GEORGE FARRELL, ESQUIRE**
Florida Bar Number: 1022504
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
*Attorneys for Plaintiff*
jmp@floridajustice.com
amy@floridajustice.com
george@floridajustice.com