# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

MARTINEZZ BOWMAN,

      Plaintiff,

vs.                                Case No.  3:22-cv-545-MMH-MCR

MARK A. HUNTER, et al.,

      Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendant Sheriff Hunter's Motion to Dismiss and Motion to Strike (Doc. 30; Sheriff's Motion), filed August 22, 2022; Defendant David Harvey's Motion to Dismiss (Doc. 31; Harvey's Motion), filed August 22, 2022; and Defendant Jayme Gohde's Motion to Dismiss (Doc. 32; Gohde's Motion), filed August 22, 2022 (collectively, "the Motions").  In the Motions, Defendants ask the Court to dismiss various counts in Plaintiff Martinezz Bowman's Amended Complaint (Doc. 29; Amended Complaint), filed August 5, 2022.  Bowman responded to the Motions on September 26, 2022.  See Plaintiff's Response in Opposition to Defendant, Hunter's Motion to Dismiss (Doc. 40; Response to the Sheriff's Motion); Plaintiff's Response in Opposition to Defendant, Harvey's Motion to Dismiss (Doc. 39; Response to Harvey's Motion); Plaintiff's Response in Opposition to Defendant, Gohde's Motion to

Dismiss (Doc. 38; Response to Gohde's Motion). Accordingly, this matter is ripe for review.

## I.   Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."
Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372
F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions
of facts or legal conclusions masquerading as facts will not prevent dismissal")
(internal citation and quotations omitted).  Indeed, "the tenet that a court must
accept as true all of the allegations contained in a complaint is inapplicable to
legal conclusions," which simply "are not entitled to [an] assumption of truth."
Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court
must determine whether the complaint contains "sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at
678 (quoting Twombly, 550 U.S. at 570).

## II.   Background[1]

On October 23, 2020, Harvey, a field training officer with the Columbia
County Sheriff's Office, was training Gohde, who was on the first day of the
second phase of her on-scene training.  Amended Complaint ¶¶ 9–10.  Harvey
and Gohde had a canine officer, Drago, with them in the patrol vehicle.  Id. ¶
13.  Harvey and Gohde saw Bowman driving a white car with what the officers

---

[1]   In considering the Motions, the Court must accept all factual allegations in the
Amended Complaint as true, consider the allegations in the light most favorable to Bowman,
and accept all reasonable inferences that can be drawn from such allegations.  Hill v. White,
321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th
Cir. 1994).  As such, the facts recited here are drawn from the Amended Complaint, and may
well differ from those that ultimately can be proved.

"believed to be legally deficient tail lights." Id. ¶¶ 9, 11.  According to Bowman, he "appeared to have mistakenly not turned his head and tail lights on." Id. ¶ 59.  Bowman's brake lights and turn signals, however, were visible.  Id. ¶ 12. When Bowman turned down the street where he lived, Harvey activated the blue lights of his patrol vehicle.  Id.  As Bowman continued to drive slowly down the street, no streetlights could "be seen for several more blocks." Id. ¶¶ 13–14. After following Bowman for a few minutes, Harvey turned on his siren.  Id. ¶ 16.  Because Bowman did not feel safe stopping in an unlit area on a road with no shoulder, he slowed down and drove to his mother's home "less than a fourth of a mile" from where Harvey had turned on his blue lights.  Id. ¶ 17.  When Bowman arrived at his mother's well-lit driveway, he turned on his left turn signal, pulled into the driveway, and stopped.  Id. ¶ 14.

After Bowman parked, Harvey and Gohde exited their patrol vehicle and approached Bowman's car with their weapons drawn.  Id. ¶ 19.  Harvey ordered Bowman to put his hands out of the car window and not to move.  Id. ¶ 23. Bowman repeatedly asked whether he was going to be shot. Id. ¶¶ 22, 24–25. Harvey ordered Bowman to step out of the vehicle slowly.  Id. ¶ 27.  Bowman replied, "Listen to me . . . come here.  Come get me, bro.  You're not going to shoot me?"  Id. ¶¶ 27–28.  Harvey warned that he would release his canine if Bowman did not step out of the vehicle.  Id. ¶ 28.  Bowman stated that this was his house and asked why the officers were pointing guns at him.  Id. ¶ 29.

Harvey again ordered Bowman to exit the car and told him to "Stop." Id. ¶ 30. Bowman asked, "You want me to get out?" Id. At some point, Bowman got out of the car. Id. ¶ 31. Harvey ordered Bowman not to face the officers. Id. Harvey yelled, "Last warning!" and then released the canine. Id. ¶ 33. Bowman alleges that the canine bit Bowman's leg and remained latched on for "several minutes," even after Bowman was handcuffed. Id. ¶ 35–36, 48. Throughout the encounter, Gohde held Bowman at gunpoint. Id. ¶ 145.

An ambulance took Bowman to a hospital where he initially refused treatment because officers were present. Id. ¶¶ 53, 57. The officers released Bowman from custody and turned him over to the medical personnel. Id. ¶ 54. While Bowman alleges that "[n]o one was arrested that night," Harvey later testified that he arrested Bowman on "fleeing and eluding, on the resisting without, I believe, and the DUI." Id. ¶ 57. Harvey also stated that "he did not believe Bowman was eluding police." Id. ¶ 41. Gohde testified that Bowman was "detained for the investigation" but not arrested. Id. ¶ 72.

On January 21, 2021, the State of Florida charged Bowman with driving under the influence (DUI). Id. ¶ 64. A few weeks later, the State also charged Bowman with driving with a suspended or revoked license. Id. ¶ 65. Finally, on May 18, 2021, the State charged Bowman with fleeing and eluding a law enforcement officer based on the October 2020 incident with Harvey and Gohde. Id. ¶ 66. The DUI charge was dismissed on June 9, 2021. Id. ¶ 67.

Bowman asserts that the head of the Columbia County Sheriff's Office, Defendant Mark A. Hunter (the Sheriff), has a policy for "Use of Non-Deadly/Less Lethal Force" that requires officers to "use only the amount of force reasonably necessary to effect lawful objectives." Id. ¶ 93. Despite this policy, Bowman alleges that the Sheriff's "actions in this case, and previous similar situations, indicate[ ] a policy and custom of indifference to the rights of those [arrested] who are nonthreatening and a failure to properly train and/or supervise [his] officers in how to deal with non-threatening eye witnesses being arrested." Id. ¶¶ 93–94. Bowman maintains that Harvey and Gohde acted pursuant to a policy or custom because the Sheriff had a "rule or regulation" and a "policy statement or decision regarding actions to be taken in response to individuals stopped pursuant to a traffic stop, including but not limited to the use of K9 Officers." Id. ¶ 131. Bowman also asserts that prior federal lawsuits "reveal a history of systemic abuse and constitutional rights violations" by deputies at the Columbia County Sheriff's Office. Id. ¶ 83.

Moreover, Bowman alleges that the Sheriff failed to adequately train and supervise his deputies when dealing with "those who are non-violently not complying" and "non-threatening eyewitnesses." Id. ¶¶ 90–91. According to Bowman, the Sheriff's "actions in this case, and previous similar situations, indicate[ ] a failure to train in the constitutional use of canine force and failure to adequately supervise the performance of canine unit members to ensure that

K9s and officers exhibiting bad judgment in the use of canine force received corrective training." Id. ¶ 95. Bowman alleges that Harvey and Gohde's conduct when detaining him was "contrary to established police methods" and shows that the Sheriff had "no sufficiently trained deputies" to deal with the situation. Id. ¶ 127. Bowman maintains that there has been an "increasing and alarming number of similar incidents" in which deputies have falsely arrested and seriously injured or endangered individuals. Id. ¶¶ 96–97. As an example, Bowman asserts that Harvey exercised improper judgment in the use of his Taser on August 17, 2017, "despite the training that had been set in place." Id. ¶¶ 84–85, 98–99. According to Bowman, this incident with the Taser, like the incident with Bowman, was a "result of circumventing instilled de-escalation training," and was caused by "utterly poor decision making." Id. ¶¶ 84–85. Bowman also alleges that, although Harvey took training courses in "diversity sensitivity" and "traffic stop procedure," he has "repeatedly lacked the ability to implement those procedures." Id. ¶ 86.

Based on these and other allegations, Bowman initiated this action on May 17, 2022, by filing a Complaint (Doc. 1). Bowman filed the operative Amended Complaint on August 5, 2022. In Counts I and II of the Amended Complaint, Bowman asserts claims under 42 U.S.C. § 1983 against Harvey and Gohde, respectively, for their use of excessive force when arresting Bowman. See Amended Complaint ¶¶ 111–22. In Count III, Bowman alleges that the

Sheriff is liable under § 1983 for having inadequate policies and for failing to properly train and supervise officers in detaining individuals and properly using force. See id. ¶¶ 123–33. In Count IV, Bowman asserts a negligence claim against Harvey and maintains that the Sheriff is vicariously liable as Harvey's employer. See id. ¶¶ 134–39. In Counts V and VI, Bowman alleges that Harvey and Gohde, respectively, are liable for battery. See id. ¶¶ 140–47. In Count VII, Bowman asserts a § 1983 claim against Harvey and Gohde for arresting Bowman without probable cause. See id. ¶¶ 148–57. In Count VIII, Bowman alleges that Defendants are liable under state law for Bowman's unlawful detention. See id. ¶¶ 158–64. Finally, in Count IX, Bowman asserts a malicious prosecution claim against Harvey. See id. ¶¶ 165–70.

The Sheriff asks the Court to dismiss Counts III, IV, and VIII of the Amended Complaint. Sheriff's Motion at 2. Harvey requests the dismissal of Counts IV and VII. Harvey's Motion at 2. And Gohde asserts that Counts VI and VII should be dismissed. Gohde's Motion at 2.

## III.   Discussion

Having carefully reviewed the Amended Complaint, the briefing, and the applicable law, the Court concludes that the Sheriff's Motion is due to be granted, in part, and denied as moot, in part; Harvey's Motion is due to be granted; and Gohde's Motion is due to be granted, in part, and denied, in part.

### A.   Federal Claims

In Counts III and VII, Bowman asserts claims under 42 U.S.C. § 1983. Amended Complaint ¶¶ 123–33, 148–57.  "In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law."  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

### 1.   Count III: § 1983 Municipal Liability

In Count III, Bowman alleges that the Sheriff is liable, in his official capacity, for violating Bowman's constitutional rights.  Amended Complaint ¶¶ 123–33.  The Sheriff argues that Bowman has failed to state a claim under § 1983 because Bowman has not identified any policy that caused the alleged constitutional violations and has not plausibly alleged the existence of a custom that caused the constitutional harms.  Sheriff's Motion at 8–13.  Similarly, the Sheriff contends that Bowman presents no factual allegations to support his conclusion that the Sheriff knew of a need for greater training and supervision. Id. at 15–16.

In his Response to the Sheriff's Motion, Bowman argues that he has plausibly alleged the existence of a custom based on his allegations that there are prior lawsuits against the Sheriff for "excessive force/constitutional violations." Response to the Sheriff's Motion at 4.  In addition, Bowman asserts that, by alleging that the canine ignored Harvey's "niche" command to stop

attacking, Bowman has plausibly stated that the Sheriff was deliberately indifferent to the need for training.[2]  Id.  According to Bowman, the Sheriff also knew of the need for additional training because a citizen complained about Harvey's use of force on one previous occasion.  Id. at 5.  Finally, Bowman argues that, although one incident is not enough to raise a genuine issue of material fact as to the existence of a custom at the summary judgment stage, "less fully developed allegations are acceptable" at the pleadings stage.  Id.

At the outset, the Court notes that "[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents."  Vineyard v. County of Murray, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) (citation omitted).  Therefore, Bowman's claim against the Sheriff in his official capacity is a municipal liability claim against Columbia County.  The Supreme Court of the United States has soundly rejected the theory of respondeat superior as a basis for liability in § 1983 actions.  See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).  Instead, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue."  Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted).  Thus, a plaintiff must establish that an official policy or custom of the

---

[2]  Bowman does not cite to where he supposedly made this allegation in the Amended Complaint, and the Court has not found an allegation regarding a "niche" command.

municipality was the "moving force" behind the alleged constitutional deprivation.  See Monell, 436 U.S. at 693–94.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted).  The policy requirement is designed to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted).  Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers."  City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483–84 (1986)).  A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation; therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation.  See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice."  Sewell, 117 F.3d at 489.

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the [municipality] may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390. However, failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 388–89. Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998); see also Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021). The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." Gold, 151 F.3d at 1351. Indeed, "the need for such training must be plainly obvious to [a municipality's] decisionmakers," such as where there is "evidence of a history of widespread prior abuse." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990); see also Rocker v. City of Ocala, 355 F. App'x 312, 314 (11th Cir. 2009) (per curiam).[3] Notably, the Supreme Court, in dictum,

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See

has left open the possibility that in some instances "a need to train could be 'so obvious,'" that a municipality could be held liable even without a pattern of prior constitutional violations.  Gold, 151 F.3d at 1352 (quoting City of Canton, 489 U.S. at 390).  As an example, the Supreme Court pointed to the need to train officers in the use of deadly force where the officers are provided firearms.  City of Canton, 489 U.S. at 390 n.10.

Here, the Court concludes that Bowman has not plausibly alleged that any express policy was the "moving force" behind the alleged constitutional harms that he suffered.  Although Bowman refers to specific policies, he has not alleged that those policies caused constitutional deprivations.  For example, Bowman asserts that the Sheriff had a policy for "Use of Non-Deadly/Less Lethal Force" that requires officers to "use only the amount of force reasonably necessary to effect lawful objectives."  Amended Complaint ¶ 93.  Therefore, if the officers used unreasonable force against Bowman, they acted in violation of the Sheriff's policy.  Similarly, Bowman asserts that the Sheriff had a "rule or regulation" and a "policy statement or decision regarding actions to be taken in response to individuals stopped pursuant to a traffic stop, including but not limited to the use of K9 Officers."  Id. ¶ 131.  But Bowman does not allege that

---

McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see also Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

this rule and policy statement mandated any behavior in violation of the law. As such, Bowman has failed to allege that the Sheriff should be liable for an express policy.

The Court also finds that Bowman has not plausibly alleged the existence of a "custom" of false arrests or the use of excessive force in circumstances similar to those alleged here. Bowman asserts that there has been an "increasing and alarming number of similar incidents" in which deputies have falsely arrested individuals and seriously injured or endangered individuals through misconduct. Id. ¶¶ 96–97. However, he points to no specific prior instances of a false arrest in support of this broad conclusion. Moreover, Bowman alleges only one specific example of excessive force: Harvey's use of his Taser on August 17, 2017. Id. ¶¶ 84–85, 98–99. This alleged incident involving a Taser is not sufficiently similar to Bowman's arrest to raise an inference that the Sheriff tolerates a custom of using canines to impose excessive force on non-threatening individuals. See Connick v. Thompson, 563 U.S. 51, 62–63 (2011) ("Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation."); Darnell v. Rivera, No. 6:15-cv-999-Orl-37TBS, 2016 WL 3000819, at *3 (M.D. Fla. May 25, 2016) ("Notably, however, none of the alleged instances of police misconduct involve the 'filing [of] false and unsubstantiated internal affairs complaints,' nor do these incidents bear

any factual similarity to the violation allegedly suffered by Plaintiff.").[4]  Even if the Taser incident were sufficiently similar, two incidents over the course of three years do not raise a reasonable inference of a custom of excessive force. See Marantes v. Miami-Dade County, 649 F. App'x 665, 673 (11th Cir. 2016) (per curiam) ("And, even broadly construing the amended complaint, he has cited only two inciden[ts] of alleged excessive force—his arrest and a homicide involving the same set of officers who arrested him.  These allegations do not show that the County had a 'longstanding and widespread practice' of encouraging excessive force.").

Bowman also alleges that "PACER, the index of federal lawsuits, reveals a history of systemic abuse and constitutional rights violations."  Amended Complaint ¶ 83.  However, Bowman does not assert that those lawsuits involve factual situations similar to his claims here, nor does he provide any information as to the outcome of the lawsuits.  See id.  Without that information, the Court cannot reasonably infer that these lawsuits show the existence of a custom of false arrests or excessive force.  See Buckler v. Israel, 680 F. App'x 831, 836 (11th Cir. 2017) (per curiam) (finding that eight lawsuits did not provide notice of a pattern of constitutional violations when only two

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

suits "resulted in a jury finding" against the sheriff's office, those two suits were from the late-1980s, and the plaintiffs did not show that the lawsuits "involved substantially similar factual situations"). Bowman's own experience, by itself, is insufficient to suggest the existence of a custom of using canine officers to inflict excessive force. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 821–22 (1985) (plurality opinion); see also Grech, 335 F.3d at 1330 n.6 (noting that "a single incident would not be so pervasive as to become a custom or practice"). In sum, Bowman's factual allegations are simply insufficient to plausibly claim that there is either a policy of the Sheriff to use canines to inflict excessive force or a practice or custom of using such excessive force, much less that the practice was so widespread that the Sheriff had notice of the practice and made a "conscious choice" to disregard it. Gold, 151 F.3d at 1350; see also Cluff v. Miami-Dade County, No. 22-10704, 2022 WL 16757095, at *3 (11th Cir. Nov. 8, 2022) (per curiam) ("[Cluff] writes that this 'is not the first time' county employees committed a litany of wrongs . . . . But the district court is right that there is no citation to any 'report,' 'cases involving a similar violation,' or 'newspaper accounts indicating even one other instance' of such conduct. In short, Cluff pled no facts to show a custom. Dismissal was proper.").

For similar reasons, Bowman has failed to plausibly allege a constitutional violation based upon a failure to train. Notably, Bowman asserts that Harvey took training courses in "diversity sensitivity," "traffic stop

procedure," and "de-escalation."  Amended Complaint ¶¶ 84–86.  According to Bowman, Harvey's misconduct resulted from his "circumventing" that training. Id. ¶¶ 84, 86.  Bowman has not alleged that the Sheriff provided no training at all to his canines to abide by commands and to their handlers to use only reasonable force.  Consequently, this is not a case where the Sheriff failed to implement any training in an area where it was patently obvious that constitutional violations would occur without training.  Moreover, as discussed above, Bowman has not alleged a pattern of misconduct that would put the Sheriff on notice that the existing training programs were inadequate.  Because Bowman has not alleged any specific instances of excessive force from a canine officer, he has not stated a plausible claim that the Sheriff must have known that canine officers and their handlers needed corrective training.  See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1328–30 (11th Cir. 2015).

Bowman's remaining allegations concerning the Sheriff's alleged policies and customs are too vague and conclusory to withstand a motion to dismiss. Sada v. City of Altamonte Springs, No. 6:09-cv-506-Orl-31KRS, 2009 WL 3241984, at *3 (M.D. Fla. Oct. 5, 2009) ("Such a mechanical recitation of the elements of a deliberate indifference claim is insufficient to survive a motion to dismiss.").  As the Supreme Court instructs, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (second alteration in original) (citation omitted) (quoting <u>Twombly</u>, 550 U.S. at 555, 557). Accordingly, the Court finds that the Sheriff's Motion is due to be granted as to Count III.

### 2.     Count VII: § 1983 Unlawful Detention/Arrest

In Count VII, Bowman alleges that Harvey and Gohde violated his right under the Fourth Amendment to be free from unreasonable seizures. Amended Complaint ¶¶ 149–50. Harvey and Gohde argue that Count VII should be dismissed because the allegations in the Amended Complaint establish that they had probable cause to detain Bowman for driving at night without illuminated headlights and taillights. Harvey's Motion at 11; Gohde's Motion at 13. Harvey and Gohde also assert that they cannot be liable for the later criminal charges that Bowman faced because the State filed those charges. Harvey's Motion at 11; Gohde's Motion at 13.

Bowman argues that his allegations show that Harvey arrested Bowman without probable cause. Response to Harvey's Motion at 5. Bowman contends that he "does not admit his tail light was out" and that Harvey knew or should have known that Bowman's taillights were "not defective." <u>Id.</u> at 5–6. According to Bowman, he has stated a claim against Gohde because Gohde held Bowman at gunpoint and did not intervene to stop the violation of his constitutional rights. Response to Gohde's Motion at 4.

"The Fourth Amendment . . . guarantees the right against <u>unreasonable</u> searches and seizures." <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 734 n.15 (11th Cir. 2010) (emphasis added). "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." <u>Id.</u> at 734. Under both federal and Florida law, "[f]or probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002). This standard is met when "a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." <u>Washington v. Howard</u>, 25 F.4th 891, 902 (11th Cir. 2022) (alteration in original) (quoting <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 588 (2018)).[5] In addressing a false arrest claim, the Eleventh Circuit has stated that "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." <u>Crocker v. Beatty</u>, 995 F.3d 1232, 1244 (11th Cir. 2021) (alteration in original) (quoting <u>Bailey v. Bd. of Cnty. Comm'rs</u>, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)), <u>cert. denied</u>, 142 S. Ct. 845 (2022). In addition, "an officer's subjective intent doesn't matter for 'ordinary, probable-

---

[5] In <u>Washington</u>, the Eleventh Circuit rejected an older standard that required "'facts and circumstances . . . [that] <u>would</u> cause a prudent person to believe . . . that the suspect has committed, is committing, or is about to commit an offense.'" 25 F.4th at 899, 902 (second and third alterations in original) (quoting <u>Hardigree v. Lofton</u>, 992 F.3d 1216, 1230 (11th Cir. 2021)). In this case, the Court's analysis leads to the same result under either standard.

cause Fourth Amendment analysis.'" Id. (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).

Here, the Court finds that the allegations of the Amended Complaint establish that Harvey and Gohde had probable cause to arrest Bowman.  In the Amended Complaint, Bowman alleges that he was driving at night and that he "appeared to have mistakenly not turned his head and tail lights on" when Harvey and Gohde spotted his vehicle.  Amended Complaint ¶¶ 14, 17, 59. Driving at night without lit headlights and taillights was a violation of Florida law.  See Fla. Stat. §§ 316.217(1)(a), 316.221(1) (2020).  Because Harvey and Gohde saw Bowman driving while it appeared that his lights were off, a reasonable officer in their situation "could conclude . . . that there was a substantial chance of criminal activity." Washington, 25 F.4th at 902.  Notably, the Fourth Amendment does not forbid an officer from making a warrantless arrest "for a minor criminal offense," such as a traffic violation punishable only by a fine.  Atwater v. City of Lago Vista, 532 U.S. 318, 323, 354 (2001); see Crocker, 995 F.3d at 1244–45.  Indeed, Florida law permits a law enforcement officer to arrest those who commit a violation of chapter 316, the Florida Uniform Traffic Control Law, in the officer's presence.  See Fla. Stat. § 901.15(5).  Therefore, because Harvey and Gohde had probable cause to believe that Bowman was committing a traffic violation, a decision to stop and arrest

Bowman did not violate the Fourth Amendment.  See Crocker, 995 F.3d at 1244–45.

In response to Harvey's Motion, Bowman argues that he has not admitted that he was driving without his taillights illuminated.  See Response to Harvey's Motion at 5.  Citing paragraph 12 of the Amended Complaint, Bowman contends that he has alleged that his lights were visible.  See id.  However, in paragraph 12, Bowman asserts only that his brake lights and turn signals could be seen, not that the taillights were visible.  See Amended Complaint ¶ 12.  Thus, the allegation in paragraph 12 does not contradict Bowman's own statement that it "appeared" that his headlights and taillights were off, see id. ¶ 59, nor does it undermine his allegation that the officers "believed" him to be operating a vehicle with "deficient tail lights," see id. ¶ 9.  As such, the Court finds that the allegations in the Amended Complaint establish that Harvey and Gohde had probable cause to arrest Bowman.  Because Harvey and Gohde had probable cause to arrest Bowman, he has not alleged a plausible Fourth Amendment claim.[6]  Accordingly, the Court will dismiss Count VII.

---

[6] Harvey and Gohde also argue that they are entitled to qualified immunity.  See Harvey's Motion at 9–11; Gohde's Motion at 11–13.  In light of the Court's finding on the merits that the allegations in Count VII, accepted as true, do not establish a violation of the Fourth Amendment, the Court need not separately discuss qualified immunity.  See Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).

**B.    State Claims**

Defendants also move to dismiss three of Bowman's state law claims: Count IV (negligence against Harvey and the Sheriff); Count VI (battery against Gohde); and Count VIII (unlawful detention/arrest).  In section 768.28 of the Florida Statutes, the State of Florida waives sovereign immunity for tort actions against municipalities and its officers and employees under certain conditions.  However, section 768.28 provides immunity to a state employee

> for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a) (2022).  Courts construing the bad faith prong of section 768.28 use the actual malice standard, <u>Parker v. State Bd. of Regents ex rel. Fla. State Univ.</u>, 724 So. 2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent," <u>Reed v. State</u>, 837 So. 2d 366, 368–69 (Fla. 2002).  Conduct meeting the wanton and willful standard is defined as "worse than 'gross negligence,'" <u>Sierra v. Associated Marine Insts., Inc.</u>, 850 So. 2d 582, 593 (Fla. 2d DCA 2003), and "more reprehensible and unacceptable than mere intentional conduct," <u>Richardson v. City of Pompano Beach</u>, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987).  Florida's Fourth District Court of Appeal has instructed that "'wanton' means 'with a conscious and intentional indifference to consequences and with

the knowledge that damage is likely to be done to persons or property,'" while "'[w]illful' means 'intentionally, knowingly and purposely.'" <u>Peterson v. Pollack</u>, 290 So. 3d 102, 109–10 (Fla. 4th DCA 2020) (quoting Fla. Std. Jury Instr. (Crim.) 7.9; Fla. Std. Jury Instr. (Crim.) 28.5; Fla. Std. Jury Instr. (Crim.) 28.19). Notably, a plaintiff's threadbare recital that a defendant "acted maliciously and in bad faith is conclusory" and insufficient to pierce an officer's immunity. <u>Brivik v. Law</u>, 545 F. App'x 804, 807 (11th Cir. 2013); <u>see McClelland v. Cool</u>, 547 So. 2d 975, 976–77 (Fla. 2d DCA 1989).

With respect to municipal liability claims, unlike federal § 1983 claims, Florida law allows a municipality to be held vicariously liable for the tortious acts of its employees. <u>See Young v. Borders</u>, No. 5:13-cv-113-Oc-22PRL, 2014 WL 11444072, *21 (M.D. Fla. Sept. 18, 2014); <u>Saballos v. Bonilla</u>, No. 05-21928-CIV, 2006 WL 3940552, *8 (S.D. Fla. Dec. 5, 2006). Indeed, except when an employee acts outside the scope of his employment or "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," Florida law provides that

> [t]he exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer . . . is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee . . . .

Fla. Stat. § 768.28(9)(a); see also Searer v. Wells, 837 F. Supp. 1198, 1201 (M.D. Fla. 1993).[7] Thus, where an officer, in the course of his or her employment with the municipality, engages in a wrongful act but does not do so maliciously or in bad faith, the municipality is the party to be held responsible. See, e.g., Gregory v. Miami-Dade County, 719 F. App'x 859, 873 (11th Cir. 2017); Desai v. Farmer, No. 5:12-cv-495-Oc-34PRL, 2014 WL 5474417, *9 (M.D. Fla. Oct. 29, 2014); Hargis v. City of Orlando, No. 6:12-cv-723-Orl-37KRS, 2012 WL 6089715, *6 n.12 (M.D. Fla. Dec. 7, 2012); Petithomme v. County of Miami Dade, No. 11-20525-CIV, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011); Peguero v. Delaurentos, No. 11-20069-CIV-JORDAN, 2011 WL 13223704, *1 (S.D. Fla. May 12, 2011); Burks v. Beary, 713 F. Supp. 2d 1350, 1360–61 (M.D. Fla. 2010). In other words, under Florida law, a party can only succeed in a tort claim against an individual officer, or the government entity who employed that officer, but not both. See Ullman v. Fla. Dep't of Corr., No. 5:17-cv-66-Oc-30PRL, 2017 WL 2103392, *2 (M.D. Fla. May 15, 2017) (citing McGhee v. Volusia County, 679 So. 2d 729, 733 (Fla. 1996)); Desai, 2014 WL 5474417, at *9; Hargis, 2012 WL 6089715, at *6 n.12. Applying this statutory framework, the Court considers Bowman's state law claims.

---

[7]  A county, as well as its associated units, such as a sheriff's office, falls within the ambit of section 768.28(9)(a). See, e.g., Shehada v. Tavss, 965 F. Supp. 2d 1358, 1375 (S.D. Fla. 2013) (noting municipalities are governed by Fla. Stat. § 768.28); Battiste v. Lamberti, 571 F. Supp. 2d 1286, 1305–06 (S.D. Fla. 2008) (Fla. Stat. § 768.28 applies to Sheriff).

### 1.    Count IV: Negligence

In Count IV, Bowman asserts a negligence claim against Harvey and against the Sheriff as Harvey's employer.  Amended Complaint ¶¶ 134–39.  Both Harvey and the Sheriff argue that Count IV should be dismissed because the alleged conduct was intentional, not negligent.  Harvey's Motion at 5–6; Sheriff's Motion at 17–18.  Harvey and the Sheriff also contend that they are otherwise entitled to immunity from suit: Harvey, because he is immune from suit for merely negligent conduct, Harvey's Motion at 5–6, and the Sheriff, because Bowman alleges that Harvey acted in bad faith or with a malicious purpose, Sheriff's Motion at 17.  Finally, the Sheriff maintains that he is immune from suit for the alleged negligent training and supervision because training and supervision are discretionary, not operational, functions.  Sheriff's Motion at 18–19.

In his responses, Bowman argues that Harvey had a duty of care toward those in custody and Harvey breached that duty of care "when he commanded K-9 Drago to attack the Plaintiff while he was already in custody."  Response to Harvey's Motion at 3–4; Response to the Sheriff's Motion at 6.  Bowman contends that whether Harvey is entitled to statutory immunity is a question of fact that should be "submitted to the fact finder."  Response to Harvey's Motion at 4.  As to the Sheriff, Bowman asserts that using reasonable care to protect an arrestee is an operational function, not a discretionary function for

which the Sheriff would be immune from suit.  Response to the Sheriff's Motion at 6.

When presented with a negligence suit against a state or its subsidiary, the Court "should first determine whether the circumstances alleged would subject a private person to liability under Florida law." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989)).  To state a claim of negligence, a plaintiff must allege the elements of duty, breach, causation, and damages.  Id. (citing Paterson v. Deeb, 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985)); see also Wynn v. City of Lakeland, 727 F. Supp. 2d 1309, 1316 (M.D. Fla. 2010).  If the plaintiff can meet this burden, then the Court must decide "whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to implementation of an already established policy." Lewis, 260 F.3d at 1262.  A "governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." Cook, 402 F.3d at 1117 (quoting Lewis, 260 F.3d at 1266); see also Gelbard v. City of Miami, 845 F. Supp. 2d 1338, 1340 (S.D. Fla. 2012) (quoting Lewis, 260 F.3d at 1264).

In addition, "[t]he Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" Secondo v. Campbell, 327 F. App'x 126, 131 (11th Cir. 2009)

(per curiam) (quoting City of Miami v. Sanders, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)).  However, "a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force, . . . [but] the negligence component must pertain to something other than the actual application of force during the course of arrest." Id. (quoting Sanders, 672 So. 2d at 48).  For example, "a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim" is recognized under Florida law.  Lewis, 260 F.3d at 1263; see also Wyatt v. City of Jacksonville, No. 3:08-cv-264-J-32TEM, 2008 WL 2916358, at *1 (M.D. Fla. July 29, 2008) (finding that the plaintiff adequately alleged a cause of action for negligent handling of a police dog).

Here, the Court finds that the negligence claim against Harvey is due to be dismissed.  To the extent Bowman alleges that Harvey was merely negligent, Harvey is entitled to statutory immunity.  See Fla. Stat. § 768.28(9)(a); Keck v. Eminisor, 104 So. 3d 359, 366 (Fla. 2012) (per curiam) ("The complaint alleges that Keck committed ordinary negligence, and thus, pursuant to section 768.28(9)(a), he cannot be liable or even be named as a party defendant in the action . . . .").  And to the extent Bowman alleges Harvey acted with a malicious purpose or a wanton and willful disregard for human rights, his actions were the intentional use of excessive force, which cannot support a negligence claim.

See Amended Complaint ¶¶ 33, 134, 137; Secondo, 327 F. App'x at 131.  In either case, Bowman has failed to state a plausible claim for negligence against Harvey.

The Court also concludes that Bowman has failed to state a negligence claim against the Sheriff.  In Count IV, Bowman alleges that the officers assumed a duty of care toward Bowman when they detained him.  Amended Complaint ¶ 135.  Bowman asserts that Harvey breached this duty of care by "failing to keep control over his K-9 so as not to inflict severe injuries" and "deploying his K-9 under the facts and circumstances presented."  Id. ¶ 136.  Bowman pleads that Harvey's actions "were intentional and carried out in bad faith and with malicious intent."  Id. ¶ 137.  These allegations do not assert a claim for "something other than the actual application of force during the course of arrest."  Secondo, 327 F. App'x at 131 (quoting Sanders, 672 So. 2d at 48).  Notably, Bowman does not plead that Harvey accidentally or negligently released the canine.  Rather, Bowman alleges that Harvey chose to release the canine to inflict force.  See Amended Complaint ¶¶ 33, 134, 137.  And, Bowman's argument in his Response to the Sheriff's Motion confirms that Bowman is alleging an intentional act.  See Response to the Sheriff's Motion at 6 (arguing that Harvey breached the duty of care when he "commanded K-9 Drago to attack" (emphasis added)).  Because "there is no such thing as the negligent commission of an intentional tort" under Florida law, Secondo, 327 F. App'x at

131 (quoting <u>Sanders</u>, 672 So. 2d at 48), the Court finds that Bowman has failed to state a negligence claim with regard to the release of the canine.

As to Bowman's allegations about the canine's training, the Court concludes that Bowman has not plausibly alleged that the Sheriff may be liable for this training. Bowman asserts that Harvey "fail[ed] to properly train his K-9 to abide by voice [and lead] commands to release Bowman." Amended Complaint ¶ 136. However, Bowman has not pled that Harvey <u>unsuccessfully</u> ordered the canine to release Bowman. <u>See id.</u> ¶ 51 (alleging that, after Harvey handcuffed Bowman, Harvey "finally removed Drago"). Therefore, Bowman has not plausibly alleged that negligent training caused any of his injuries. In addition, the Court notes that the Sheriff is immune from suit for his discretionary decisions about "how to train [his] officers and what subject matter to include in the training." <u>Lewis</u>, 260 F.3d at 1266. Although Bowman may challenge the "implementation or operation" of the Sheriff's training program, <u>id.</u>, Bowman has not done so in the Amended Complaint, and he has not argued that he is challenging the implementation of the training program. <u>See</u> Response to the Sheriff's Motion at 6. Thus, the Court concludes that Count IV is due to be dismissed.[8]

---

[8] The Court notes that the Federal Rules of Civil Procedure (Rule(s)) permit Bowman to plead in the alternative. <u>See</u> Rule 8(d)(2). Bowman could have asserted that the officers are liable for intentionally committing a battery and asserted, alternatively, that the Sheriff is liable for the officers' negligent handling of their police dog. However, Bowman did not plead in the alternative or argue that he pled the negligence count in the alternative. As

### 2.   Count VI: Battery

In Count VI, Bowman alleges a battery claim against Gohde.  Amended Complaint ¶¶ 144–47.   Gohde argues that Count VI should be dismissed because she is immune from suit.  Gohde's Motion at 7.  Gohde asserts that she is immune from suit because Bowman has not alleged that she acted with a malicious purpose, in bad faith, or willfully and wantonly.  Id.  In his Response to Gohde's Motion, Bowman argues that he has plausibly alleged that Gohde participated in his arrest and failed to intervene to protect him from the canine.  Response to Gohde's Motion at 3.   Bowman argues that he may plead theories in the alternative until he can obtain discovery as to Gohde's state of mind.  Id.

"Battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005).  An individual may be liable for aiding and abetting a battery committed by another if the individual knows of the wrongdoing and provides "substantial assistance in committing the wrongdoing." Taubenfeld v. Lasko, 324 So. 3d 529,

---

stated, in Count IV, Bowman alleges intentional acts that cannot form the basis of a negligence claim.  Therefore, the Court will dismiss Count IV.  Nevertheless, if Bowman believes in good faith that he can plead a negligence claim against the Sheriff in the alternative or if he identifies negligent acts separate and distinct from the officers' use of force, he may file a motion seeking leave to file a second amended complaint.  Likewise, if Bowman believes that he can state a claim challenging the implementation of the Sheriff's training program, he can seek leave to add that claim.  The Court reminds Bowman that any motion seeking leave to amend must comply with the applicable rules, including Rule 11.  See Order (Doc. 42), filed October 11, 2022.

543–44 (Fla. 4th DCA 2021) (quoting <u>Lawrence v. Bank of Am., N.A.</u>, 455 F. App'x 904, 906 (11th Cir. 2012)).  Here, Bowman alleges that Gohde held him at gunpoint while Harvey released the canine on Bowman and allowed the canine to maul Bowman even after he was handcuffed and under the officers' complete physical control.  Amended Complaint ¶ 145.  These allegations permit a reasonable inference that Gohde aided and abetted Harvey's alleged battery with a wanton and willful disregard for Bowman's human rights and safety.  <u>See</u> <u>Thompson v. Douds</u>, 852 So. 2d 299, 309 (Fla. 2d DCA 2003). Accordingly, Gohde's Motion is due to be denied as to Count VI.

### 3.   Count VIII: Florida Unlawful Detention/Arrest

In Count VIII, Bowman alleges that Defendants unlawfully arrested him in violation of state law.  Amended Complaint ¶¶ 158–64.  The Sheriff argues that Count VIII is due to be dismissed because the allegations in the Amended Complaint show that Harvey had probable cause to detain Bowman on the night in question and that the State, not the officers, filed the later charges against Bowman.  Sheriff's Motion at 19–21.  Under Florida law, "[f]alse arrest is defined as the unlawful restraint of a person against that person's will," but "probable cause is an affirmative defense" to that intentional tort.  <u>Willingham</u> <u>v. City of Orlando</u>, 929 So. 2d 43, 48 (Fla. 5th DCA 2006).  For the reasons discussed above, the Court finds that the allegations of the Amended Complaint establish that Harvey and Gohde had probable cause to arrest Bowman for a

traffic violation. See Crocker, 995 F.3d at 1245. To the extent that Bowman bases his claim on the later criminal prosecutions, his allegations show that those prosecutions were pursuant to a legal process initiated by state prosecutors and cannot form the basis of a false arrest claim. See Jackson v. Navarro, 665 So. 2d 340, 341–42 (Fla. 4th DCA 1995). Thus, the Court will dismiss Count VIII.[9]

## IV.   Conclusion

For the foregoing reasons, the Court concludes that Harvey's Motion is due to be granted, while the Sheriff's Motion and Gohde's Motion are due to be granted, in part, and denied, in part. Specifically, the Court will dismiss Count III (§ 1983 claim against the Sheriff); Count IV (negligence claim against Harvey and the Sheriff); Count VII (§ 1983 claim against Harvey and Gohde); and Count VIII (Florida false arrest claim against the Sheriff). However, the Court will not dismiss the battery claim against Gohde in Count VI.

---

[9]   It is unclear whether Bowman asserted Count VIII against all Defendants or only the Sheriff. Regardless, the Court will dismiss the claim as to all Defendants because none of Defendants could be liable for a false arrest claim when the officers had probable cause to arrest Bowman.

In addition, because the Court will dismiss Count VIII, the Court will deny as moot the Sheriff's motion to strike the request for punitive damages in Count VIII. See Sheriff's Motion at 22.

Accordingly, it is

**ORDERED:**

1.   Defendant Sheriff Hunter's Motion to Dismiss and Motion to Strike (Doc. 30) is **GRANTED, in part**, and **DENIED as moot, in part**.

    A.   The Sheriff's Motion is **GRANTED** to the extent that Counts III, IV, and VIII of the Amended Complaint are **DISMISSED**.

    B.   The Sheriff's Motion is **DENIED as moot** to the extent the Sheriff sought to strike the request for punitive damages in Count VIII.

2.   Defendant David Harvey's Motion to Dismiss (Doc. 31) is **GRANTED**.

3.   Defendant Jayme Gohde's Motion to Dismiss (Doc. 32) is **GRANTED, in part**, and **DENIED, in part**.

    A.   Gohde's Motion is **GRANTED** as to Count VII.

    B.   Gohde's Motion is **DENIED** as to Count VI.

4.   Counts III, IV, VII, and VIII of the Amended Complaint (Doc. 29) are **DISMISSED**.

5.     The Clerk of the Court is directed to terminate Defendant Mark A. Hunter from the Court docket.   This case will proceed on the remaining claims against David Harvey and Jayme Gohde.

**DONE AND ORDERED** in Jacksonville, Florida, on March 17, 2023.


**MARCIA MORALES HOWARD**
United States District Judge


lc30

Copies to:

Counsel of Record